UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RHONDA E REYNA,

    Plaintiff,

    v.

CITY OF SANTA CRUZ, et al.,

    Defendants.

No. 23-cv-03121-WHA

**ORDER DISMISSING FIRST AMENDED COMPLAINT**

# INTRODUCTION

In this 42 U.S.C. § 1983 action, *pro se* plaintiff was granted leave to file an amended complaint so long as it complied with several rulings which were outlined in a screening order (Dkt. No. 17). For the following reasons, this order finds that the amendments to the complaint are futile and therefore the first amended complaint is **DENIED**. The complaint is hereby **DISMISSED**.

# STATEMENT

*Pro se* plaintiff Rhonda Reyes originally filed her Section 1983 complaint against 49 defendants, who included judicial and prosecutorial officials, alleging a conspiracy over her loss of custody of her daughter, who was a minor when the complaint was originally filed. The original complaint provided an account of events spanning from 2014 to 2023 in which the father of plaintiff's daughter allegedly abused both her and her daughter several times, and an alleged conspiracy between the daughter's father, several state actors and a state judge have prevented plaintiff's custody over her daughter. Defendants also include the San Mateo County and Santa Cruz County, law enforcement officers of both counties, San Mateo Family Court, several attorneys and psychologists, and a non-profit organization.

In a previous order (Dkt. No. 17), Judge Susan Illston reviewed the complaint in its entirety pursuant to 28 U.S.C. § 1915 and dismissed plaintiff's complaint with leave to amend

certain claims provided that plaintiff abided by five main rulings and several additional caveats. Shortly after that order was filed, the action was reassigned to the undersigned judge. A subsequent order from this Court provided that if plaintiff failed to abide by Judge Illston's order, the instant action would be dismissed.

Plaintiff's amended complaint again provides an account of events from 2014 to 2023, and center around her arrest by Santa Cruz police officers in June 2021 in which several police officers allegedly strangled plaintiff's daughter and took plaintiff to jail. She now brings nine claims for relief under Section 1983 alleging violations of the First Amendment, a *Monell* claim under Section 1983, the Second Amendment, the Fourth Amendment, the Fifth Amendment, the Eighth Amendment, the Fourteenth Amendment, 42 U.S.C. § 1985, and 42 U.S.C. § 1986. She also seeks compensatory and punitive damages.

**ANALYSIS**

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that a constitutional right was violated and (2) that the violation was committed by a person acting under the color of the law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

"The *Rooker-Feldman* doctrine instructs that federal district courts are without jurisdiction to hear direct appeals from the judgments of state courts. Congress, in 28 U.S.C. § 1257, vests the United States Supreme Court, not the lower federal courts, with appellate jurisdiction over state court judgments." *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012) (citing *Lance v. Dennis*, 546 U.S. 459, 463 (2006)). This proscription does not apply to literal appeals only: "The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal." *Ibid*. (citing *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003)). In evaluating whether an action is a de facto appeal, "we must pay close attention to the relief sought by the federal-court plaintiff." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (citation omitted). Lastly, the *Rooker-Feldman* doctrine applies even when the state court judgment is

not made by the highest state court. *Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n.3 (9th Cir. 1986).

Here, insofar as plaintiff seeks to reverse or appeal an order from San Mateo Family Court or any other decision made by a state judicial officer, this order will not (and indeed cannot) exercise jurisdiction to do so. As will be seen in due course, plaintiff attempts to seek relief from state court rulings through the instant complaint. Such action, however, would be barred through the *Rooker-Feldman* doctrine.

1. **JUDGE ILLSTON'S ORDER**

Judge Illston's order provided five main rulings for plaintiff to abide by in order to cure the deficiencies found within the original complaint. The following is a brief recapitulation of each ruling. This order will also return to Judge Illston's order in evaluating each of plaintiff's claims for relief.

*First*, plaintiff fundamentally seeks relief under 42 U.S.C. § 1983, which has a statute of limitations of two years. Given that the original complaint was filed on June 23, 2023, Judge Illston stated that plaintiff cannot bring claims related to events that occurred prior to June 23, 2021, unless plaintiff can show that the claims are timely (Dkt. No. 17 at 6).

*Second*, some of the named defendants, which include a state judge and a district attorney investigator, may be immune from the relief that plaintiff seeks. Here, three types of immunity are in play: judicial immunity, sovereign immunity, and prosecutorial immunity. Plaintiff cannot name any defendants—namely, San Mateo District Attorney Investigator James Haggarty— that are immune from suit, unless plaintiff can explain why immunity does not require dismissal of that defendant from this action.

*Third,* plaintiff shall not bring any Section 1983 claims against individuals or organizations who are not state actors. If the plaintiff does bring a Section 1983 claim against private parties, plaintiff must identify the specific conduct that is allegedly state action (Dkt. No. 17 at 9).

3

*Fourth,* plaintiff has a daughter who was a minor when the original complaint was filed. However, the daughter's father appears to have sole custody. As observed by Judge Illston, our court of appeals has held that "a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." *Johns v. County of San Diego*, 114 F.3d 874. 977 (9th Cir. 1997). Moreover, "a noncustodial parent, who retains some parental rights, may have standing to maintain a federal lawsuit to the extent that his [or her] assertion of retained parental rights under state law is not legally incompatible with custodial parent's assertion of rights." *Newdow v. U.S. Congress*, 313 F.3d 500, 503-504 (9th Cir. 2002). In light of this, plaintiff shall either remove claims brought on behalf of plaintiff's daughter or add her daughter as a plaintiff. In the latter scenario, plaintiff should also explain whether she has any parental rights regarding her daughter and whether a custody order prohibits lawsuits on her daughter's behalf (Dkt. No. 17 at 9).

*Fifth*, plaintiff cannot use the instant action as an avenue to appeal decisions of the San Mateo Family Court, given that lower federal courts are without subject matter jurisdiction to review state court decisions. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486-487 (1983).

## 2. FIRST AMENDMENT

Plaintiff alleges that she was deprived of a fundamental right to familial association and free speech with her daughter (Amd. Compl. ¶ 224). Although she makes a general claim that all defendants deprived her of her rights under the First Amendment (¶ 228), her claim for relief is focused on two groups of defendants.

The first group includes Julia Ferguson, Nancy Read, Rebecca Bailey, Lisa Bergman, and "possible defendant Judge Don R. Franchi" (Amd. Compl. ¶ 224). All claims against Ferguson, Read, and Bailey are **DISMISSED** because they are private actors. Nor has plaintiff alleged that their actions constitute state action.

With respect to Lisa Bergman, a family court mediator in San Mateo, plaintiff alleges interactions with her from 2017 to 2021. As stated above, all claims based on events before June 23, 2021, are untimely unless plaintiff can show the timeliness of the claim. Here,

4

1  plaintiff fails to specify the time period or specific facts that form the basis of her First
2  Amendment claim with respect to Lisa Bergman, it is impossible to determine whether the
3  claims against Bergman are timely.  Judge Illston observed the same problem in plaintiff's
4  original complaint and ordered plaintiff to demonstrate that the events for which she is suing
5  Bergman are timely (Dkt. 17 at 5-6).  Given that plaintiff has failed to cure this problem in the
6  amended complaint, all First Amendment claims against Lisa Bergman are **DISMISSED**.  Lastly,
7  with respect to Judge Franchi, all claims must be **DISMISSED** in light of judicial immunity.

The second group of defendants are comprised of District Attorney Inspector James Haggarty, Santa Cruz police officers Adam Riddell, Angel Serrano, David Deady, Andy Mills, Santa Cruz Police Chief Bernie Escalante, Santa Cruz Police Sergeant Eric Hoppe, Santa Cruz Police Deputy Chief Jonathan Bush, and San Mateo Sheriff's Deputy Gerano Urena.  With respect to the named police officers, this order reiterates frustration in trying to determine plaintiff's timeliness in raising her claims; plaintiff fails to specify which factual allegations form the basis of her First Amendment claim.  Nor does plaintiff specify which defendant committed which alleged violations of the First Amendment.  The conclusory nature of plaintiff's allegations alone warrant dismissal.  With respect to James Haggarty, plaintiff must "explain why the doctrine of absolute prosecutorial immunity does not require dismissal" (Dkt. No. 17 at 8).  Given that plaintiff has failed to explain why Haggarty is not immune from suit, claims against him must be dismissed.

In light of the forgoing, plaintiff's First Amendment claims are **DISMISSED**.

### 3.  *MONELL* CLAIM

Plaintiff alleges a *Monell* claim against "all defendants" in this action because they "have a policy and practice to deny mothers of domestic violence equal protection under the laws" (Amd. Compl. ¶ 232).  In subsequent paragraphs, plaintiff's *Monell* claim specifically names defendants San Mateo County, Santa Mateo County Sheriff, Santa Cruz County, and Santa Cruz County Sheriff (Amd. Compl. ¶¶ 235-239).

Neither state officials nor municipalities are vicariously liable for the deprivation of constitutional rights by employees.  *Monell v. Department of Social Services of the City of New*

*York*, 436 U.S. 658, 694 (1978).  Rather, with respect to a municipality, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police came into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  Plaintiff must allege facts to show that both counties and sheriff offices "disregarded the known or obvious consequence that a particular omission in their training program would case [municipal] employees to violate citizens' constitutional rights."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  This typically requires "a pattern of similar constitutional violations is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."  *Ibid*. (internal quotations omitted).

Here, plaintiff asserts three "policies" as the basis of her *Monell* claim against the counties of San Mateo and Santa Cruz.  *First*, plaintiff alleges that both counties have a policy to misuse grants dedicated to the Violence Against Women Act which in turn deprives women of their constitutional rights (Amd. Compl. ¶ 236).  Plaintiff, however, fails to allege facts which would show a pattern of misusing grant funds.  Nor does plaintiff specify which constitutional right here is at issue.

*Second*, plaintiff alleges that both counties have a policy that "infringes a mother's right to bear arms using boiler plate civil and criminal protective orders" (¶ 237).  Here, plaintiff refers to a temporary restraining order signed by Judge Franchi which prohibited plaintiff from possessing a firearm (¶ 128).  However, this allegation presents a single incident of a supposed 'policy' as opposed to a pattern of behavior in order to show deliberate indifference.  Nor does plaintiff clarify if the temporary restraining order is still in effect or if it was terminated.  Moreover, insofar as plaintiff is seeking to effectively appeal a state judge's decision or order through this claim for relief, this order will not (indeed cannot) exercise jurisdiction.  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004).

*Third,* plaintiff alleges that Santa Cruz County, Santa Cruz Sheriff's Office, San Mateo County, and San Mateo Sheriff's Office have failed to train its staff on the dangers of suffocation and strangulation injuries.  To support this, plaintiff alleges her daughter was

strangled by a Santa Cruz police officer (Amd. Compl. ¶ 116). However, this order finds that because the alleged acts were committed by a single officer "does not suffice" for the purpose of establishing a pattern of constitutional violations by untrained employees. *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014). There is also an additional problem regarding plaintiff raising claims on behalf of her daughter. Plaintiff was instructed not raise claims on her daughter's behalf unless she has custodial rights which permit her to do so, in which case plaintiff must add her daughter as an additional plaintiff and retain a lawyer (Dkt. No. 17 at 10). Plaintiff has not indicated whether she has any custodial rights over her daughter, nor has she attempted to add her daughter as a plaintiff or retain an attorney.

For the forgoing reasons, plaintiff has not sufficiently alleged patterns of behavior among any of the four named defendants in order to raise a *Monell* claim under Section 1983. Plaintiff's *Monell* claim is therefore **DISMISSED**.

4. **SECOND AMENDMENT**

Plaintiff alleges that she was prohibited from possessing a firearm as a result of an order written by a Santa Cruz officer which was signed by Judge Franchi (Amd. Compl. ¶ 241). As stated above, insofar as plaintiff asserts this claim for relief as a way to appeal or overturn an order by a state judge, this order cannot assert jurisdiction over that claim.

Plaintiff also alleges more broadly that Santa Cruz County and San Mateo County infringed on her right to bear arms (¶ 243). However, these claims regarding the two counties are vague at best; she does not provide any factual allegations to support her claim for relief. For this reason, the claim is also **DISMISSED**.

5. **FOURTH AMENDMENT**

Plaintiff's amended complaint centers around her arrest by Santa Cruz officers on June 28, 2021, which forms the basis of her Fourth Amendment claim (¶ 120). Plaintiff also seeks relief in the form of compensatory (and potentially punitive) damages for her arrest (¶ 363).

Plaintiff previously raised several allegations in the original complaint regarding her arrest in June 2021, though Judge Illston identified several deficiencies. This order will

7

summarize her rulings and subsequently review plaintiff's amended allegations in light of those rulings.

The fundamental issue with plaintiff's allegations in the original complaint was that she sought relief in the form of damages for her arrest, implicating the *Heck* rule. *Heck v. Humphrey*, 512 U.S. 477 (1994), held that a plaintiff cannot bring a civil rights action for damages whose unlawfulness would render a conviction or confinement invalid, unless that conviction or sentence already has been determined to be wrongful. See *id*. at 486-487. The *Heck* rule also prevents a person from bringing an action that—even if it does not directly challenge the conviction— would imply that the conviction is invalid. Therefore, if a successful claim under Section 1983 would necessarily require plaintiff to prove the unlawfulness of  plaintiff's confinement or conviction, then there is no cognizable claim under Section 1983; in that case, plaintiff would need to have her conviction or confinement "reversed on direct appeal, expunged by executive order, declared invalid by a state authorization authorized to make such a determination, or called into question" by a writ of habeus corpus before raising a Section 1983 claim in federal court. *Id*. at 486-487.

### A.     ALLEGATIONS IN ORIGINAL COMPLAINT

In the original complaint, plaintiff alleged that she was arrested by Santa Cruz police officers and that several officers assaulted her daughter in the process. She further alleged that she had been taken to jail, submitted to a strip search, and had her prescription glasses taken away. Further, in November 2021, she was allegedly coerced into signing a plea deal of *nolo contendere* to a misdemeanor of custodial interference. Plaintiff provided no other information as to what became of the criminal case against her.

Because of this lack of information regarding the status of the criminal case against plaintiff, Judge Illston's order "could not determine whether the claims are or are not barred by *Heck*" (Dkt. No. 17 at 12). Therefore, in light of the *Heck* rule, Judge Illston ordered plaintiff to provide the following information for every event that led to a criminal charge against plaintiff that relates to an claim for relief: (1) generally describe the incidents that led to the charges in that case; (2) the list of charges filed; (3) the crimes of which she was convicted;

and (4) any favorable termination of the charges, such as dismissal, acquittal, or reversal on appeal (Dkt. No. 17 at 13).

Further, for any plea agreement that plaintiff entered, she should describe (1) the crime or crimes to which she pled guilty or no contest; (2) the charges that were dismissed and (3) the sentence that was imposed. Lastly, with respect to plaintiff's arrest in June 2021, plaintiff should explain why that conviction does not pose a *Heck* bar, especially if plaintiff asserts a claim of excessive force (*ibid.*).

Judge Illston also noted that the original complaint did not contain as much detail regarding the actions taken against plaintiff as it did regarding her daughter; plaintiff was encouraged to provide more detail as to any action taken against her. With this in mind, this order now provides an overview of plaintiff's amended allegations.

### B.   ALLEGATIONS IN AMENDED COMPLAINT

Plaintiff now alleges that she was not aware that there had been a warrant out for her arrest (¶ 115). As she was being arrested, one officer had plaintiff's hand "painfully wrenched behind [her] back" (¶ 115) as her daughter was "dogpiled" by several officers. Plaintiff again alleges that she was taken to the county jail where she submitted to a strip search, had her prescription glasses taken away, and could not make a phone call until several hours later (¶ 126). Plaintiff was released five hours after posting bail of $6,000. She also alleges that she was "coerced" into giving a DNA sample to a correctional officer (*ibid.*).

Plaintiff was subsequently issued a certificate which stated that her being taken into custody was a detention, and not an arrest, pursuant to California Penal Code Section 851.6 (Exh. B). That section states that when someone has been arrested and released but "an accusatory pleading is not filed charging him or her with an offense," then that person shall be issued a certificate describing the action as a detention. CAL. PEN. CODE § 851.6(b).

Plaintiff further alleges that in July 2021, Judge Franchi had signed a temporary domestic violence restraining order against plaintiff which prohibited her from possessing a firearm (¶ 128).

Lastly, in November 2021, plaintiff "was unduly influenced" and signed a plea deal to *nolo contendere* to a misdemeanor of custodial influence (¶ 143). Plaintiff was given time served of two days in jail, one year of probation, and she paid a fine.

### C. CLAIMS FOR RELIEF UNDER FOURTH AMENDMENT

This order now reviews plaintiff's claims for relief under the Fourth Amendment and whether plaintiff's amended allegations fulfill Judge Illston's order. Plaintiff essentially alleges three violations under the Fourth Amendment. *First*, she alleges that the arrest warrant was obtained using "false evidence" and "omissions of exculpatory evidence" which caused her to be "unlawfully seized" (Amd. Compl. ¶ 245). *Second*, she alleges that she was subjected to an unlawful strip search, her DNA was unlawfully seized, and her prescription glasses unlawfully seized (¶¶ 246-248). *Third*, plaintiff asserts that Officer Sergio Venegas used excessive force against plaintiff by holding her in a wrist lock and that she was "unreasonably left [her] in handcuffs," and allegedly told plaintiff he would hurt her (¶ 249). To be clear, plaintiff has neither proven that her conviction has been overturned, whether there are still any ongoing criminal actions against her, or that her detention was rendered unlawful or invalid.

This order now addresses the issue left open in Judge Illston's order: whether plaintiff's Fourth Amendment claims would "necessarily require the plaintiff to prove the unlawfulness of [her] conviction or confinement." *Heck*, 512 U.S. at 486. If her claims do, in fact, require plaintiff to prove the unlawfulness of her conviction or confinement, then her claim for damages, as seen in this action, "is not cognizable under § 1983." *Id*. at 487.

#### *(i)   Deficient Warrant and Unlawful Seizure*

This order finds that plaintiff's claim that she was "unlawfully seized" using "false evidence" to be barred by *Heck* for two reasons.

*First*, plaintiff's claim would challenge her pleading no contest to a misdemeanor of custodial interference. Given that plaintiff does not allege whether evidence was taken and introduced against her, it is more likely that the arrest warrant was based on the same conduct she pled no contest to. Therefore, to attack the arrest warrant would, under *Heck*, undermine the validity to what she pled no contest to.

10

Second, plaintiff's claim would challenge the legality of her detention, which has not been overturned or declared invalid. While disputing the conditions of or what transpired during the duration of plaintiff's detention might not be barred by *Heck*, this order finds that permitting plaintiff to bring a claim for an "unlawful seizure" would require proving the unlawfulness of her detention. To be clear, plaintiff has not alleged that her detention was expunged or reversed after she pled no contest; in fact, plaintiff states that she was given time served of two days in jail.

Therefore, this order finds that plaintiff's claim that she was unlawfully seized using false information to be barred by *Heck* and is therefore **DISMISSED**.

### *(ii) Strip Search, DNA Sample, and Confiscation of Prescription Glasses*

This order now turns to plaintiff's claims regarding the strip search, the DNA sample taken from her, and the confiscation of her prescription glasses. This order finds that asserting a claim for an unlawful strip search, unlawfully taking a DNA sample, and unreasonably seizing plaintiff's prescription would not require proving the unlawfulness of plaintiff's "conviction or confinement" and therefore would not be barred by *Heck*. However, this order finds that plaintiff nonetheless fails to state a claim for relief under the Fourth Amendment.

With respect to strip searches, our court of appeals has held that a policy requiring strip searches of all arrestees as part of the booking process does not itself violate the Fourth Amendment. *Bull v. City and County of San Francisco*, 595 F.3d 964, 982 (9th Cir. 2010). Further, our court of appeals as recognized an interest in preventing drugs, weapons, and other contraband from being smuggled into detention and county jail facilities. *Id*. at 966. Here, plaintiff alleges that a Jane Doe of the Santa Cruz County Sheriff's Office subjected her to a strip search (Amd. Compl. ¶ 245). Given that the strip search was conducted by someone of the same sex while plaintiff was getting booked into a county jail, this order finds that plaintiff has not stated a claim for relief under the Fourth Amendment.

Further, with respect to taking a DNA sample from plaintiff, this order finds that plaintiff has failed to state a claim under the Fourth Amendment. The taking a sampling of a suspect's

DNA whether through a cheek swab, fingerprinting, or photographing, is "a legitimate police booking procedure that is reasonable under the Fourth Amendment." *Maryland v. King*, 569 U.S. 435, 465-466 (2013). Here, plaintiff has not alleged facts which could be construed as anything other than a standard booking procedure by the Santa Cruz County jail. Therefore, plaintiff has failed to state a claim under the Fourth Amendment.

With respect to the confiscation of plaintiff's glasses, "clothing or other belongings may be seized upon arrival of the accused at the place of detention." *U.S. v. Edwards*, 415 U.S. 800, 804 (1974). As stated above, county jails and other detention facilities enforce safety and contraband procedures to ensure that suspects are not bringing items that could be used (or taken apart and then used) as weapons. Therefore, this order finds that the confiscation of plaintiff's glasses itself does not state a claim for relief under the Fourth Amendment. While it is possible that a prolonged deprivation of plaintiff's glasses constitutes a Section 1983, the amended complaint does not provide sufficient factual allegations to determine the length of time that plaintiff was deprived of her glasses. Given that plaintiff herself was in a position to provide such detail but failed to do so, this order finds that there is insufficient detail for plaintiff's claim to survive the pleading stage.

Therefore, plaintiff's claims regarding the strip search, the DNA sample, and the prescription glasses are **DISMISSED**.

### (iii) Excessive Force

Lastly, this order turns to plaintiff's claim for excessive force. The *Heck* rule does not necessarily bar a Section 1983 excessive force claim, because an excessive force claim does not necessarily imply the invalidity of her conviction or sentence because an officer's alleged use of excessive force during an arrest "does not preclude the possibility" that the plaintiff was still guilty of the convictions. *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006). Therefore, this order finds that plaintiff's excessive force claim is not barred by *Heck*. The inquiry, however, does not end here; plaintiff's allegations must still survive the pleading stage.

To state a claim for excessive force, plaintiff must allege facts showing that she (1) suffered some injury which (2) resulted from force that was clearly excessive to the need for

force; and (3) the excessiveness of which was objectively unreasonable. "It is well-established that overly tight handcuffing can constitute excessive force," particularly where the suspect tells the officer the handcuffs are too tight and the officer refuses to loosen them. *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004).

As stated above, plaintiff alleges that the handcuffs left her in pain (Amd. Compl. ¶ 249). She also alleges that she told Officer Venegas that they left her in pain. However, plaintiff does not allege that she actually asked him (or any other officer) to loosen or remove the handcuffs, or that such a request was denied. This order finds that plaintiff's allegations fail to connect her experience with the handcuffs to the action (or inaction) of one or more defendants. Judge Illston noted the same problem in plaintiff's original complaint: "[t]he complaint . . . does not contain as much information about the excessive force she alleges was taken against plaintiff herself" (Dkt. No. 17 at 13). So too here. This order finds that there are factual gaps in plaintiff's allegations which have not been cured in the amended pleadings and therefore cannot survive the pleading stage. As such, plaintiff's excessive force claim is also **DISMISSED**.

In light of the aforementioned reasons, this order finds that plaintiff has failed to state a claim for relief under Section 1983 premised on a violation of the Fourth Amendment. Therefore, plaintiff's claims for relief under the Fourth Amendment are **DISMISSED**.

### 6.  FIFTH AMENDMENT

Plaintiff alleges three violations pursuant to the Fifth Amendment. *First*, that she was held by the Santa Cruz sheriff's office "for an infamous crime without indictment of a Grand Jury" (Amd. Compl. ¶ 251). *Second*, that she was subject to the same offense in two different courts (¶ 252). *Third*, that 23 named defendants "have deprived [her] of life, liberty, or property without Due Process of Law" (¶ 253).

Regarding plaintiff's first point, the Fifth Amendment right to a grand jury only applies to federal courts and has not been applied to states via the Fourteenth Amendment. *Gautt v. Lewis*, 489 F.3d. 993, 1003 n.10 (9th Cir. 2007). Therefore, no Fifth Amendment right to a grand jury has been implicated.

With respect to the second point, plaintiff fails to identify the proceedings she underwent in order to allege that she was subject to two courts for the same offense. After combing through plaintiff's amended complaint, this order presumes that plaintiff is referring to on-going hearings in "criminal court" regarding her misdemeanor of custodial interference (Amd. Compl. ¶ 142e). However, this order finds that plaintiff did not allege that she was being tried or punished for the same offense in another court. Plaintiff herself speculates whether the same proceedings were happening in family court in San Mateo but stops short of actually alleging whether such proceedings took place. Even if plaintiff had sufficiently alleged that there was also an ongoing action in family court for the same offense, a family court action is not a criminal action, and therefore would not implicate the Double Jeopardy Clause. As such, plaintiff has not sufficiently pled a claim for double jeopardy.

Regarding plaintiff's third point, a fundamental problem arises. Plaintiff's allegation is purely conclusory, citing to no facts, dates, or indeed which defendant committed which type of Fifth Amendment violation. Conclusory allegations alone warrant dismissal of plaintiff's Fifth Amendment claim.

As such, plaintiff's Fifth Amendment claim for relief is **DISMISSED**.

### 7. EIGHTH AMENDMENT

Plaintiff raises a claim for relief under the Eighth Amendment asserting that she was subject to an excessive bail of $100,000 and had to pay $6,000 to be released from Santa Cruz County Jail (Amd. Compl. ¶ 255). This claim for relief warrants dismissal because bail-related claims are barred by absolute judicial immunity because judges are entitled to absolute judicial immunity for acts performed in their official capacity. *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986). Although plaintiff technically alleges that District Attorney Inspector James Haggarty set the bail excessively high, as opposed to a judicial officer, this does not alter the fact that plaintiff is still barred from bringing forth a bail-related claim for relief. Plaintiff's Eighth Amendment claim for relief is therefore **DISMISSED**.

14

### 8. FOURTEENTH AMENDMENT

Under the Fourteenth Amendment, plaintiff raises several points. This order finds that all of them are conclusory because they lack factual allegations. For example, plaintiff's allegations include that "all named defendants have discriminated against [her]" (Amd. Compl. ¶ 259). She also asserts that several named defendants, including private actors and the counties of San Mateo and Santa Cruz have "perpetrated substantive Due Process [v]iolations against [her]" (¶ 262). She subsequently asserts that another subset of named defendants have "deprived [her] of [her] right to equal protection under the law" (¶ 258). Lastly, plaintiff has alleged that "all named defendants have deprived [her] of a fundamental right to parent including the right to care, custody, and control of [her] daughter" (¶ 261).

This order finds that all of these claims are insufficiently pled because plaintiff does not provide factual allegations to specify what exactly each named defendant is alleged to have done or to ensure that any claims based on their actions are not time-barred. With respect to plaintiff's last assertion, this order finds that plaintiff is attempting to reverse or appeal her lack of custody over her daughter, which implicates a decision or order made by a state court. As stated above, this action cannot be used as a vehicle to overturn a decision made by a stated court. As such, plaintiff's claims under the Fourteenth Amendment are **DISMISSED**.

### 9. 42 U.S.C. §1985 AND § 1986

With respect to Section 1985, plaintiff alleges "all [d]efendants have conspired to interfere with my Civil Rights" (Amd. Compl. ¶ 361). To prove a conspiracy, plaintiff must allege an agreement or "meeting of the minds" to violate the plaintiff's constitutional rights. *Woodrum v. Woodward County, Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989). Conclusory allegations do not support a claim for the violation of a plaintiff's constitutional rights under Section 1983. *Ibid*. Here, this order finds that plaintiff uses the word 'conspiracy' several times throughout her amended complaint without ever alleging any specific facts to show any agreement or meeting of the minds between any of the named defendants.

For example, plaintiff accuses her former attorney, Travis Whitfield, and Judge Franchi of conspiring to exclude exculpatory evidence in court (Amd. Compl. ¶ 132c) but fails to

allege that there was an understanding or agreement between the two which would give rise to a conspiracy. This order finds that plaintiff has failed to allege the requisite elements for a conspiracy claim in order to survive the pleading stage. Moreover, where plaintiff does refer to (albeit in a conclusory manner) to conspiracies, they are attached to events prior to June 23, 2021, which are time-barred unless plaintiff can demonstrate otherwise (¶¶ 71, 111). For these reasons, the Section 1985 claim is **DISMISSED**.

Lastly, plaintiff asserts a claim for relief under Section 1986 in which she simply asserts that "all defendants who knew of the conspiracy to interfere of the Conspiracy to interfere with [her] civil rights, neglected to prevent it" (¶ 362). This order finds that this claim warrants dismissal because our court of appeals has held that a cause of action under Section 1986 cannot be brought absent a valid claim under Section 1985. *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985). Given that the Section 1985 claim warrants dismissal, so too does this order **DISMISS** plaintiff's claim under Section 1986.

## CONCLUSION

Before the undersigned judge will allow the waiver of filing fees, require federal marshals to serve summons on all 49 defendants, or require so many parties to respond to countless allegations, plaintiffs must state a claim for relief. She has not. For the reasons stated above, plaintiff has failed to state a claim under Section 1983 and this action is **DISMISSED WITHOUT LEAVE TO AMEND**.

If plaintiff wishes to appeal, she should file a notice of appeal in the district court within thirty days of entry of judgment and timely docket her appeal in the court of appeals. **THE CLERK SHALL CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: August 9, 2024.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

16